# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**STACEY BERRIER**, *Administrator of the Estate of* **RYAN ELIZABETH TROWBRIDGE**, *deceased.*
PO Box 232
Hamersville, OH 45130

    Plaintiff,

vs.

**LAKE COUNTY, OHIO and LAKE COUNTY OHIO, BOARD OF COUNTY COMMISSIONERS**
105 Main Street
Painesville, OH 44077

and

**FRANK LEONBRUNO**, *in his individual and official capacity as Lake County, Ohio Sheriff*
c/o Lake County Sheriff's Office
104 East Erie Street
Painesville, OH 44077

and

**CAPT. CYNTHIA BROOKS**, *in her individual and official capacity as Administrator of Lake County Adult Detention Facility*
c/o Lake County Sheriff's Office
104 East Erie Street
Painesville, OH 44077

and

**BRYAN PATE**, *in his individual and official capacity as a Corrections Officer*

**CASE NO.:**

**JUDGE:**

**COMPLAINT**

JURY TRIAL DEMANDED

1

c/o Lake County Sheriff's Office
104 East Erie Street
Painesville, OH 44077

and

**JOHN OR JANE DOE DEFENDANTS 1-10**
*Unknown Correctional Officers at Lake County Adult Detention Facility*
c/o Lake County Sheriff's Office
104 East Erie Street
Painesville, OH 44077

and

**UNIVERSITY HOSPITALS HEALTH SYSTEM, INC.**
c/o ACFB Incorporated
200 Public Square, Suite 2300
Cleveland, OH 44114

and

**KARIM RAZMJOUEI, MD**, *in his individual and official capacity as Medical Director of Lake County Adult Detention Facility*
c/o Lake County Sheriff's Office
104 East Erie Street
Painesville, OH 44077

and

**PATTY HAMMERS, RN**, *in her individual and official capacity as a nurse at Lake County Adult Detention Facility*
c/o Lake County Sheriff's Office
104 East Erie Street
Painesville, OH 44077

and

**SABRINA WATSON, RN**, *in her individual and official capacity as a nurse at Lake County Adult Detention Facility*
c/o Lake County Sheriff's Office
104 East Erie Street
Painesville, OH 44077

2

And

**CROSSROADS HEALTH**
8445 Munson Road
Mentor, OH 44060

and

**JOHN OR JANE DOE DEFENDANTS 11-20**
*Unknown Medical and Nursing Personnel at Lake County Adult Detention Facility*
c/o Lake County Sheriff's Office
104 East Erie Street
Painesville, OH 44077

and

**JOHN OR JANE DOE DEFENDANTS 21-25**
*Unknown Specific Policy Makers at Lake County Adult Detention Facility*
c/o Lake County Sheriff's Office
104 East Erie Street
Painesville, OH 44077

Defendants.

## NATURE OF THE ACTION

1. This civil rights and wrongful death case stems from Defendants' failure to provide medical care to Ryan Elizabeth Trowbridge ("Trowbridge"), a 35-year old woman, who suffered fatal injuries while in the care, custody, and control of the Lake County Adult Detention Facility ("LCADF") in June 2020. LCADF personnel and medical providers knew that Trowbridge was on medications for opioid addiction and/or withdrawal, depression, and anxiety, among other health conditions, and acted willfully, wantonly, maliciously, recklessly and with a deliberate indifference to the safety and serious medical needs of Trowbridge, when they denied Trowbridge access to medications on which she depended and to medical care, despite her requests for such medical care and medications while incarcerated, leading to Trowbridge's untimely and wrongful

death.

2. This deliberate indifference to the medical needs of Trowbridge was caused both by the deliberate indifference of those Defendants who opted not to treat her, and by the actions and culpable inactions of other Defendants, specified herein, who as policymakers failed to adopt, maintain and enforce adequate policies, procedures, training and supervision regarding the risks of death, including suicide, within LCADF.

3. This failure to adopt, maintain and enforce adequate policies, procedures, training and supervision was conscious, and taken despite the substantial certainty that it would result in the deprivation of constitutionally mandated medical care to inmates in LCADF.

4. Both the failure of certain Defendants to provide adequate and appropriate medical treatment to Trowbridge for opioid addiction and/or withdrawal, depression and anxiety, and the failure to adopt, maintain and enforce policies, procedures, training and supervision that would ensure such treatment was provided to inmates when needed, despite a substantial likelihood of serious medical harm, including suicide and death, constituted deliberate indifference to the serious medical needs of Trowbridge, in violations of rights secured to her by the Eighth and Fourteenth Amendments to the United States Constitution, which led to the serious injuries and death of Trowbridge. This civil-rights and wrongful death action seeks monetary damages on behalf of the Estate of Ryan Elizabeth Trowbridge.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a), as certain claims asserted herein arise under 42 U.S.C. §1983 and the Constitution of the United States.

6. The Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367.

7. Venue in this judicial district is proper under 28 U.S.C. §1391(b). The events giving rise to Plaintiff's claims occurred in this judicial district, and on information and belief, the Defendants reside, or at the time the events took place, resided in this judicial district.

## PARTIES

8. Plaintiff Stacey Berrier, is the mother of Trowbridge, and the duly appointed Administrator of the Estate of Ryan Elizabeth Trowbridge, Lake County Ohio Probate Case No. 20-ES-1371, who brings this action on behalf of the next of kin of Trowbridge.

9. Defendant Lake County, Ohio ("the County") was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio, acting under color of state law. The County is a "person" under 42 U.S.C. §1983 and is responsible for the policies, practices, procedures, and customs of the LCADF. The County is sued through the Lake County Ohio Board of Commissioners who are named only in their official capacity pursuant to O.R.C. § 305.12.

10. Defendant Frank Leonbruno ("Leonbruno") was, at all relevant times, the Lake County Sheriff, empowered and required under Sections 311.01 and 341.01 of the Ohio Revised Code to operate the county jail, which in this case is LCADF. He is an agent of the County, the principal officer of LCADF, a "person" under 42 U.S.C. §1983, and at all times relevant to this case acted under color of law. He is a policy maker with respect to LCADF's policies, practices and procedures, and is sued here in both his individual and official capacities for damages and other relief being sought.

11. Defendant Cynthia Brooks ("Brooks") was, at all relevant times, the Jail Administrator of LCADF charged with management, operation, and supervision of LCADF, exercising supervisory and policy-making authority for the County, and acting under color of state law. She is a "person" under 42 U.S.C. §1983. She is sued in her individual and official capacities

for damages and other relief being sought.

12. Defendant Bryan Pate ("Pate") was, at all relevant times, a corrections officer at LCADF, charged with oversight, supervision, and care of inmates at LCADF, and acting under color of state law. He is a "person" under 42 U.S.C. §1983. He is sued in his individual and official capacities for damages and other relief being sought.

13. On information and belief, John or Jane Doe Defendants 1-10 ("Doe Corrections Defendants") are, and at all times relevant were, natural persons whose identities are unknown to Plaintiff but may be obtained through the exercise of discovery, who were corrections officers, charged with the oversight, supervision and care of inmates in LCADF, acting within the scope of their employment and under the color of state law. On information and belief, each of the Doe Corrections Defendants included herein interacted with or had responsibilities towards or took acts or failed to act or intervene regarding or related to Trowbridge and each is a "person" under 42 U.S.C. §1983.

14. University Hospitals Health System, Inc. ("University Hospitals") was and currently is a non-profit corporation or entity with its principle place of business in Cuyahoga County, Ohio who possessed the facilities, equipment, and professional staff necessary to provide health care services to the inmates at LCADF and was contracted by LCADF to provide such health care services and staff to the inmates at LCADF, including Trowbridge. University Hospitals is an agency and instrumentality of the County, and charged with the performance of a traditional county function, and a state actor. It is both a body corporate and politic and a "person" within the meaning of 42 U.S.C § 1983, acting under the color of state law.

15. Defendant Dr. Karim Razmjouei ("Razmjouei") was, at all relevant times, an employee and/or agent of University Hospitals and/or the County, and the medical director or person responsible for, among other things, the creation, implementation, execution and

supervision of medical policies at LCADF, and with the care and treatment of inmates therein, including Trowbridge, and acting under color of state law. He is a "person" under 42 U.S.C. §1983, and is sued here in both his individual and official capacities for damages and the other relief being sought.

16. Defendant Patty Hammers, RN ("Hammers") is and was at all relevant times a natural person and a registered nurse employed by the County and/or University Hospitals to provide, inter alia, medical care to inmates at LCADF. She is sued here in her official capacity for purposes of obtaining the relief sought herein.

17. Defendant Sabrina Watson, RN ("Watson") is and was at all relevant times a natural person and a registered nurse employed by the County and/or University Hospitals to provide, inter alia, medical care to inmates at LCADF. She is sued here in her official capacity for purposes of obtaining the relief sought herein.

18. Defendant Crossroads Health ("Crossroads") is and was at all relevant times an Ohio non-profit corporation or entity holding themselves and their employees out to the public as providers of psychiatric services, mental health programs, substance abuse services and program, and other mental and emotional services, by and through its employees, and was contracted by LCADF to provide such psychiatric care and services for the inmates at LCADF, including Trowbridge. Crossroads is an agency and instrumentality of the County, and charged with the performance of a traditional county function, and a state actor. It is both a body corporate and politic and a "person" within the meaning of 42 U.S.C § 1983, acting under the color of state law.

19. On information and belief, John or Jane Doe Defendants 11-20, collectively "Doe Medical Defendants," were, at all relevant times, natural persons whose identities are unknown to Plaintiff but may be obtained through the exercise of discovery, who were health care providers charged with rendering medical care to inmates at LCADF. On information and belief, each of

the Doe Medical Defendants included herein interacted with or had responsibilities towards or took acts or failed to act or intervene regarding or related to Trowbridge and each is a "person" under 42 U.S.C. §1983. Each is sued here in his or her respective official capacities for purposes of obtaining the relief sought herein.

20. On information and belief, John or Jane Doe Defendants 21-25, collectively "Doe Policy Defendants," were, at all relevant times, natural persons whose identities are unknown to Plaintiff but may be obtained through the exercise of discovery, who were charged with the formulation, implementation, and supervision of corrections and medical policy in the LCADF. Each is a "person" under 42 U.S.C. §1983 and is sued here in his or her respective official capacities for purposes of obtaining the relief sought herein.

21. The Defendants, and each of them, were at all times relevant hereto, with respect to the allegations herein, acting under color and authority of state law.

22. The actions, culpable inactions, and omissions of the Defendants, and each of them, at all times relevant hereto, with respect to the allegations herein, were taken in accordance with, or constituted, the policies, practices, customs and usages of the County and Leonbruno.

## GENERAL FACTUAL ALLEGATIONS

23. At all times relevant hereto, Trowbridge suffered from multiple physical and mental health conditions, including but not limited to, opioid addiction and/or withdrawal, anxiety and depression. Upon information and belief, Trowbridge had been prescribed, and relied upon, daily prescription medications for some time, the most relevant being Sertraline and Buprenorphine/naloxone.

24. On June 2, 2020, Trowbridge was arrested for theft and taken into the custody of the LCADF.

25. As she was being booked into LCADF on June 2, 2020, Trowbridge advised the

County that she was taking medication which should be continuously administered or available, namely Sertraline and Buprenorphine/naloxone.

26. It is commonly known that immediate cessation of Sertraline and/or Buprenorphine/naloxone without supervised tapering by a medical professional can lead to suicidal ideations and/or suicide within days.

27. Trowbridge further advised the County that she was next due to take such scheduled medication(s) the evening of June 2, 2020.

28. Upon information and belief, Trowbridge's medications were not administered the evening of June 2, 2020.

29. On June 3, 2020, Watson noted Trowbridge's file to reflect that Trowbridge's prescription medications, including Sertraline and or Buprenorphine/naloxone were held "for physician review."

30. Upon information and belief, Trowbridge's medications were not administered on June 3, 2020, nor were Trowbridge's medications reviewed by a physician.

31. On June 4, 2020, Razmjouei signed off on Watson's June 3, 2020 note to "hold" Trowbridge's medications.

32. On June, 4, 2020, Trowbridge filled out an Inmate Request asking "to please see a doctor, about medications…" Such request was given to the County and signed for by "Pate" on June 5, 2020.

33. Upon information and belief, Trowbridge did not see a doctor on June 4, 2020, nor was she given her medications.

34. Also on June 4, 2020, additional medications for Trowbridge were dropped off at LCADF, including Clonidine, a medication used for opioid withdrawal, and Doxepin, an antidepressant. Hammers noted Trowbridge's file that these medications were also on "hold…for

review."

35. Despite Pate receiving Trowbridge's request to see a doctor regarding the medications she needed, upon information and belief, no physician addressed Trowbridge's concerns, nor were Trowbridge's medications subsequently administered to her on June 5, 2020 or on June 6, 2020.

36. On at least one occasion between her booking on June 2, 2020 and June 6, 2020, Trowbridge complained to other inmates that she needed her prescription medications, and that LCADF and its medical and correctional staff were not administering such medications to her.

37. Having undergone days of untreated opioid and/or prescription medication withdrawal, increased anxiety and depression, and mismanagement of her underlying medical conditions at the hands of the Defendants, Trowbridge hung herself in her cell on June 6, 2020. Emergency response personnel attempted to use life-saving measures on Trowbridge, however, Trowbridge's injuries were fatal, and she ultimately died from her injuries on June 21, 2020.

38. At no point from the time Trowbridge was booked into LCADF on June 2, 2020 until she attempted suicide on June 6, 2020, did Trowbridge see a doctor, a nurse, or any medical professional for her ailments, despite her requests to be seen and LCADF's obligation to render medical care for the needs of its inmates, including Trowbridge.

39. At no point from the time Trowbridge was booked into LCADF on June 2, 2020 until she attempted suicide on June 6, 2020, did Crossroads or the County provide a mental health assessment to Trowbridge despite Trowbridge advising the County that she was suffering from depression and/or anxiety and further advising the County that she was taking medications for such mental health conditions.

40. The medical protocols and procedures at LCADF, including the protocols and procedures for treating inmates suffering from opioid and/or prescription medication use, addiction

and/or withdrawal, and mental health disorders such as anxiety and depression, were promulgated, created, imposed and maintained by the County, University Hospitals, and/or Crossroads, by and through Leonbruno, Brooks, Razmjouei, the County, and Doe Policy Defendants.

41. The County, University Hospitals, Crossroads, Leonbruno, Brooks, Razmjouei, and/or Doe Policy Defendants are, and at all times relevant hereto, were responsible for training Pate, Watson, Hammers, Doe Corrections Defendants, and Doe Medical Defendants in those policies and procedures generally, and more broadly in the proper care of inmates in LCADF suffering from or at risk of opioid and/or prescription medication use, addiction and/or withdrawal, anxiety, depression and other mental health disorders.

42. The County, Leonbruno, Brooks, Doe Policy Defendants, Crossroads, University Hospitals, and/or Razmjouei established policies at LCDAF that were the moving force behind the death of Trowbridge.

43. The County, Leonbruno, Brooks, Doe Policy Defendants, Crossroads, University Hospitals, and/or Razmjouei implemented policies that failed to provide procedures and/or measures that were proper and effected for treatment of inmates with serious medical needs, including those suffering from drug use, addiction and/or withdrawal and mental health conditions.

44. The County, Leonbruno, Brooks, Doe Policy Defendants, Crossroads, University Hospitals, and/or Razmjouei failed to train and supervise staff in the proper delivering of medical services to inmates with serious medical needs in LCADF, including those suffering from drug use, addiction and/or withdrawal and mental health conditions.

45. Acting pursuant to the County policy, the defendants in this case have been deliberately indifferent to the known risk of injury and death posed by not treating Trowbridge's drug use, addiction and/or withdrawal and mental health conditions, and they were deliberately indifferent to her need for medical care.

46. Defendants were or should have been aware and on notice of Trowbridge's history of significant health conditions, and her need for medication, treatment, and therapies to ensure her safety while in custody.

47. On information and belief, Defendants failed to perform proper screening, evaluation, assessment, and medical intake of Trowbridge or in the alternative, disregarded and/or ignored that screening, evaluation, assessment and medical intake of Trowbridge.

48. On information and belief, Defendants refused to order, accept delivery of, or otherwise continue treatment of Trowbridge's health conditions with necessary medications.

49. On information and belief, all Defendants knew or should have known that Trowbridge's health conditions placed her at high risk of serious injury or death if not treated properly.

50. On information and belief, Pate, Watson, Hammers, Doe Corrections Defendants, and Doe Medical Defendants came into contact with Trowbridge while she was in custody of LCDAF and failed or refused take steps to keep her safe and to allow her access to necessary health care – including but not limited to access to the prescription medications on which Trowbridge depended.

51. On information and belief, Watson, Hammers, Razmjouei, and Doe Medical Defendants had access to, were aware and/or should have been aware of Trowbridge's health history, including the daily medications on which Trowbridge depended, and refused to order, accept delivery of, or otherwise provide Trowbridge with necessary medications for her health conditions.

52. On information and belief, Watson, Hammers, Razmjouei, and/or Doe Medical Defendants, had knowledge and/or should have had knowledge of Trowbridge's need for mental health care, and failed to request mental health care for Trowbridge from Crossroads, or in the

alternative, notified Crossroads of Trowbridge's need for mental health care and Crossroads failed to address Trowbridge's need for mental health care.

53. On information and belief, during her time in custody, Trowbridge asked Pate, the Doe Corrections Defendants, Doe Medical Defendants, Watson, Hammers, and/or Razmjouei, directly or indirectly, for health care, including necessary medication, and such defendants denied and/or ignored Ms. Trowbridge's requests.

54. On information and belief, despite Defendants' knowledge of Trowbridge's health conditions and need for prescription medications, they were deliberately indifferent to her risk of serious injury or death.

55. On information and belief, Defendants failed or refused to offer or procure appropriate intervention, treatment, and precautions for Trowbridge's serious, immediate, and life-threatening conditions.

56. Defendants had a duty to care for and protect Trowbridge when she was in their custody, and they willfully, wantonly, recklessly, and consciously failed to do so.

57. On information and belief, Defendants were deliberately indifferent to protecting Trowbridge from harm and failed to prevent said harm, and further failed to provide urgently needed medical care. Their conduct was unreasonable in failing to protect Trowbridge from harm.

58. On information and belief, no correctional officer has been disciplined in any way as a result of the conduct, acts, or omissions described in this Complaint.

59. On information and belief, the injuries and death of Trowbridge were preventable had Defendants not engaged in illegal conduct in violation of Trowbridge's constitutional, statutory, and other legal rights.

60. As a result of the Defendants' above actions/inactions, Plaintiff has suffered the loss of Trowbridge's support, services, society, companionship, consortium, care, assistance,

attention, protection, advice, guidance, counsel, instruction, training, and education, among other damages.

## FIRST CLAIM FOR RELIEF
### Deliberate Indifference

61. Plaintiff incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

62. Defendants at all times had a duty to ensure that the medical needs of Trowbridge would be met, and that she would not be exposed to a significant risk of substantial harm, nor suffer such harm, through the denial or lack of adequate medical attention and health care while incarcerated at LCADF.

63. Defendants were aware of the substantial risk of serious harm associated untreated drug use, addiction and/or withdrawal, depression, anxiety, and other mental health conditions generally. Defendants were further aware that Trowbridge had a recent history of depression, anxiety, and opioids use and/or abuse at the time of booking, and was thus at substantial risk of significant harm unless her withdrawal from those drugs was monitored, treated and managed.

64. Defendants were actually aware that Trowbridge was experiencing symptoms associated with the sudden cessation of her prescription medications at the hands of the Defendants when, on June 4, 2020, Trowbridge submitted a formal request for medical attention to the County, by and through Pate.

65. Despite having actual knowledge of Trowbridge's symptoms and her request for medical care associated with the deprivation of the medications on which she depended, and notwithstanding the existence of program(s) and protocols within LCADF to monitor, manage, and treat inmates experiencing drug use, addiction and/or withdrawal and/or suffering from mental health conditions, the Defendants failed to provide Trowbridge with medical care to which she had

an Eighth Amendment right.

66. In addition to, and in the alternative, despite the well-known serious medical risks associated with the sudden cessation of certain medications, untreated drug use, addiction and/or withdrawal, and untreated mental health conditions, Defendants failed to promulgate, implement, and otherwise enforce policies, practices and protocols that would prevent serious bodily harm and death of inmates at LCADF, including Trowbridge.

67. The decision to withhold and/or deny medical treatment by Defendants was wanton, willful, intentional, knowing and perverse.

68. The Defendants were thus deliberately indifferent to Trowbridge's significant need for medical care to treat a serious condition, in violation of her rights under the Eighth and Fourteenth Amendments, thereby directly and proximately causing Trowbridge's injuries and death as stated herein.

## SECOND CLAIM FOR RELIEF
### Deliberate Indifference by Failure to Train

69. Plaintiff incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

70. The County, Leonbruno, Brooks, Doe Policy Defendants, Crossroads, University Hospitals, and/or Razmjouei were charged with and responsible for the promulgation of adequate procedures, policies and protocols to ensure the safety and health of inmates at the LCADF, including policies, protocols and procedures implemented to address the significant, serious and known risks of opioid use, addiction and/or withdrawal, mental health conditions and sudden medication cessation, and did promulgate such policies, procedures and protocols for that purpose.

71. Notwithstanding this, and notwithstanding the actual promulgation and adoption of policies intended to address that risk, the County, Leonbruno, Brooks, Doe Policy Defendants,

15

Crossroads, University Hospitals, and/or Razmjouei failed to adequately train, supervise and discipline the Watson, Hammers, Pate, Razmjouei, Doe Corrections Defendants, and/or Doe Medical Defendants in the proper use of, need for and urgency of those policies, procedures and protocols.

72. Given the size of the inmate population at LCADF, the prevalence of opioid abuse and withdrawal, and the mental health conditions of anxiety and depression in society generally as well as among the incarcerated and particularly among those incarcerated at the LCADF, and the substantial and significant medical risks posed by untreated and unsupervised withdrawal and by sudden cessation of prescription medications, the deliberate failure to adequately train, supervise and discipline the medical and correctional staff at LCADF created a substantial and significant risk – indeed a near certainty – that some LCADF inmates suffering from opioid and/or medication use, addiction and/or withdrawal and/or mental health conditions would not receive the medical care, treatment and supervision necessary to prevent serious harm.

73. The failure to train, supervise and discipline in this way was deliberate, and reflected the official policy, practice, custom and usages of the County, Leonbruno, Brooks, Doe Policy Defendants, and/or Razmjouei, and through them, the County, Crossroads and University Hospitals, and constituted a deliberate indifference to the rights of those inmates at risk of serious harm from withdrawal, including Trowbridge.

74. As a direct and proximate result of this failure to train, supervise and discipline, and otherwise ensure compliance with its own withdrawal policies, protocol and procedures, Trowbridge suffered injuries leading to her death, as outlined in the preceding paragraphs.

### THIRD CLAIM FOR RELIEF
### Wrongful Death

75. Plaintiff incorporates by reference the allegations from the preceding paragraphs as

16

if fully re-alleged herein.

76. Defendants owed a duty of care to Trowbridge to protect and care for her while she was in their custody and control.

77. Defendants, individually and/or jointly and/or severally and/or by and through their agents and/or employees, acted willfully, wantonly, maliciously, and/or with a conscious and reckless disregard for the health and safety of Trowbridge, by denying her medical care and access to the prescription medications on which Trowbridge depended.

78. Defendants, individually and/or jointly and/or severally and/or by and through their agents and/or employees, willfully, wantonly, maliciously, and/or with a conscious and reckless disregard failed to establish and/or implement proper policies, procedures, and protocols the ensure the health and safety of individuals confined in the LCDAF, including Trowbridge.

79. Defendants knew or should have known of the dangers posed by their unreasonable actions and inactions.

80. As a direct and proximate result of Defendants, individually and/or jointly and/or severally and/or by and through their agents and/or employees,' willful, wanton, malicious, conscious, and reckless disregard, Trowbridge suffered serious and permanent injuries that ultimately led to her death.

81. Defendants actions caused the death of Trowbridge resulting in damages, including grief, recoverable under Ohio R.C. §2125.02.

82. By reason of the Defendants' conduct, Plaintiff, on behalf of the next of kin of Trowbridge, suffered damages and losses including but not limited, funeral and burial expenses, mental anguish, grief, and the loss of services and society of Trowbridge, as further described in Ohio Revised Code§ 2125.01, et seq., (the Ohio Wrongful Death Statute).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands that judgment be entered in her favor on all counts and prays the Court award the following relief:

A. Compensatory damages in an amount exceeding the jurisdictional amount in controversy requirement, to be determined at trial for the violation of Trowbridge's rights and her wrongful death;

B. Punitive damages in an amount to be determined at trial for the Defendants' willful, wanton, malicious, and reckless conduct;

C. Declaratory and injunctive relief against the County enjoining unlawful policies, practices, customs and ordering the institution of policies, procedures, and training for the County and its employees, agents and contractors to bring them into compliance with constitutional standards;

D. Pursuant to 42 U.S.C § 1988 and Civil Rule 54 (D), an award of reasonable attorney fees and costs of suit;

E. Pre and post judgment interest, and;

F. All other legal or equitable relief the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**KISLING, NESTICO & REDICK, LLC**

Kimberly L. Lubrani (0088031)
Attorney for Plaintiff
3412 West Market Street
Akron, Ohio 44333
Phone: 330-869-9007 / Fax: 330-869-9008
Email: Klubrani@knrlegal.com